# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| STEPHANIE KAYLOR-TRENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  11-3332 |
| | ) | |
| JOHN C. BONEWICZ, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Judgment (d/e 27).  Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.  Applying an hourly rate of $125 to the hours reasonably expended, Plaintiff's attorneys are entitled to attorney fees totaling $9,700.  Plaintiff's Bill of Costs is allowed in the amount of $934.05.

## I. BACKGROUND

In August 2011, Plaintiff, Stephanie Kaylor-Trent, filed suit against Defendant, John C. Bonewicz, P.C., pursuant to the Fair Debt Collection

Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.).  Plaintiff alleged that

Defendant violated various sections of the FDCPA, including 15 U.S.C.

§1692d(6) (providing that "the placement of telephone calls without

meaningful disclosure of the caller's identity" is a violation of § 1692d)

and 15 U.S.C. § 1692e(11) (providing that it is a violation for a debt

collector to fail "to disclose in subsequent communications that the

communication is from a debt collector").  Plaintiff sought statutory

damages of $1,000, as well as costs and attorney fees.

Defendant admitted violating the FDCPA by leaving a message on

Plaintiff's cell phone that failed to properly identify the caller's identity

and failed to disclose that the communication was from a debt collector.

See Answer, ¶¶ 14, 15 (d/e 7).  However, Defendant filed a Motion for

Judgment on the Pleadings (d/e 8) asking that the Court enter judgment

in favor of Plaintiff on liability but deny Plaintiff statutory damages.

On January 4, 2012, this Court granted Defendant's request that

the Court enter judgment against Defendant and in favor of Plaintiff on

liability but denied the request that the Court find Plaintiff was not

entitled to any damages.  <u>See</u> Opinion (d/e 10).  Instead, the Court found that Plaintiff had stated a plausible claim for statutory damages.  <u>See</u> Opinion (d/e 10).

On October 30, 2012, the matter proceeded to a bench trial on statutory damages.  Plaintiff testified on her own behalf.  Plaintiff also submitted as evidence the deposition transcripts of John C. Bonewicz (the president of Defendant) and Shantel Hamilton, one of the collectors who worked on Plaintiff's file.  Defendant presented no evidence (other than a Joint Exhibit) and called no witnesses.

On November 2, 2012, the Court, after examining the three relevant factors, awarded Plaintiff the maximum statutory amount of $1,000.  <u>See</u> Opinion (d/e 23); 15 U.S.C. § 1692k(b)(1) (identifying the relevant factors as: (1) the frequency and persistence of noncompliance by the debt collector; (2) the nature of such noncompliance; and (3) the extent to which such noncompliance was intentional).  The Court also found Plaintiff was entitled to reasonable attorney fees and costs.  <u>See</u> Opinion (d/e 23).

On November 27, 2012, Plaintiff filed her Motion for Attorneys'
Fees and Costs Pursuant to Judgment and her Bill of Costs.  <u>See</u> d/e 27,
28.  Defendant has filed its objections.  <u>See</u> d/e 29, 30.  Plaintiff filed a
response in support of her Bill of Costs.  <u>See</u> d/e 34.

## II.  ATTORNEY FEES

Plaintiff seeks attorney fees in the amount of $33,110, which
consists of: (1) 110.5 hours billed by seven attorneys at rates ranging
from $245 to $445; and (2) 7.3 hours billed by paralegals and law clerks
at $145 per hour.  Plaintiff seeks costs totaling $1,113.

Defendant objects to the amount of attorney fees Plaintiff seeks.
<u>See</u> d/e 30.  Defendant also objects to Plaintiff's Bill of Costs.  <u>See</u> d/e 29.

When calculating an award of attorney fees under the FDCPA, the
court generally begins by calculating the lodestar: the attorney's
reasonable hourly rate multiplied by the number of hours reasonably
expended.  <u>Gastineau v. Wright</u>, 592 F.3d 747, 748 (7th Cir. 2010).
Thereafter, the court may adjust the figure to reflect various factors,
including "the complexity of the legal issues involved, the degree of

success obtained, and the public interest advanced by the litigation." Id. see also Tolentino v. Friedman, 46 F.3d 645, 652 (7th Cir. 1995) (listing the twelve factors courts should consider in determining attorney fees).

The party seeking fees bears the burden of proving the reasonableness of the hourly rate charged and the reasonableness of the hours worked. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999). If the party seeking fees meets her burden, the burden shifts to the opposing party to demonstrate why a lower rate should be awarded. Id. at 555. If the party seeking fees does not meet her burden, then the Court "has the authority to make its own determination of a reasonable rate." Pickett v. Sheridan Health Care Center, 664 F.3d 632, 640 (7th Cir. 2011), citing Uphoff v. Elegant Bath, Ltd., 176 F. 3d 399, 409 (7th Cir. 1999) (where the plaintiff only offered self-serving affidavits to demonstrate the market rate, the district court did not err by reducing the rate from $190 per hour to $115 per hour).

A.    Plaintiff's Attorneys Failed to Prove Their Market Rate

1.    *The Parties' Positions*

All of Plaintiff's attorneys were, at the time services were rendered, employed by Krohn & Moss, Ltd.  Plaintiff seeks fees for lead attorneys Adam Hill and Mike Agruss at a rate of $290 per hour; for partners Adam Krohn and Scott Cohen at $445 per hour; for consulting attorneys Douglas Baek and Jessica Pascale at $290 per hour; for consulting attorney Matthew Rosenthal at $245 per hour; and for paralegal and law clerks at $145 per hour.  Plaintiff asserts that these rates are commensurate with the experience and training of each individual.

The biographies of the attorneys reflect that Attorney Hill graduated law school in 2007 and is licensed to practice law in Illinois and New York.  The Illinois Attorney Registration and Disciplinary Commission lists Attorney Hill as having been admitted to the Illinois bar in 2007.  Attorney Hill concentrates his practice in the area of consumer protection and breach of warranty, with a focus on the FDCPA.  He has worked for Krohn & Moss, Ltd., as an attorney since 2007.

Attorney Agruss has been licensed in Illinois since May 2004 and in

California since 2008.  He joined Krohn & Moss, Ltd., in September 2008 and concentrates his practice on the FDCPA.  Although not reflected in the biography attached to the Motion, the Motion to Substitute Counsel filed in this case reflects that Attorney Agruss left Krohn & Moss, Ltd., in February 2012.  <u>See</u> d/e 14.

Attorney Baek graduated law school in 2008 and is an active member of the California bar.  He joined Krohn & Moss, Ltd., in 2010 and concentrates his practice on the FDCPA and other consumer protection statutes.

Attorney Pascale has been licensed in California since 2009 and in New York since 2010.  She joined Krohn & Moss, Ltd. as an attorney in 2011 and concentrates her practice on the FDCPA.

Attorney Rosenthal was admitted to the Illinois bar in 2010 and the California bar in 2011.  He joined Krohn & Moss, Ltd. in June 2012. He concentrates his practice on the FDCPA.

Attorney Krohn is the managing and founding partner of Krohn & Moss, Ltd.  He was admitted to the Illinois bar in November 1994.

Attorney Cohen is a consumer attorney concentrating his practice on breach of warranty, fair debt collection, and consumer fraud actions. He was admitted to the Illinois bar in November 1996. Attorney Cohen has been employed as an attorney at Krohn & Moss, Ltd. since November 1996.

Plaintiff also supports her attorneys' rates with the following evidence:

> (1) the 2010 Consumer Law Attorney Fee Survey Report (attached as Exhibit D of the Motion), which shows the average rate for consumer protection attorneys in the Midwest region are $263 per hour for an attorney practicing 3 to 5 years and $430 per hour for attorneys practicing 11 to 15 years;
>
> (2) citation to the 2007 National Law Journal Survey, which Plaintiff asserts shows an average mean billing rate in the Chicago area of $431.20 per hour for partners and $261 per hour for associates;
>
> (3) United States's Attorney's Office Laffey Matrix[1], which shows, for 2011-2012, rates

---

[1] "The Laffey Matrix is a table of hourly rates for attorneys and paralegals in the Washington, D.C. area prepared by the Civil Division of the United States Attorney's Office for the District of Columbia." Carr v. Tillery, 2010 WL 1963398,

> ranging from $240 for an attorney with 1 to 3
> years experience to $495 for an attorney with over
> 20 years experience.

Hill, Baek, Pascale, and Rosenthal also provided a declaration

indicating that the time entries bearing his or her name truly and

accurately reflect the services performed while representing Plaintiff.  <u>See</u>

d/e 27-3.

Finally, Plaintiff supports the fee petition with the Declaration of

Daniel Schumacher (Exhibit F), in which Schumacher asserts that he has

practiced law in Springfield, Illinois since 1994.  Schumacher also asserts

that the rates sought by Plaintiff's attorneys are reasonable.

Defendant objects to Plaintiff's counsel's rates, asserting they are

unreasonable according to prevailing market rates in Springfield, Illinois.

Defendant cites to several courts that have given little weight to the

Laffey Matrix, the Consumer Law Attorney Survey, and the National

Law Journal Survey.  Def. Resp. p. 3-4 (d/e 30).

Defendant also challenges Attorney Schumacher's Declaration on

---

at *7 (S.D. Ill. 2010).

the ground that Schumacher is employed as an attorney at Plaintiff's counsels' firm.  In support thereof, Defendant attaches to its Response Attorney Schumacher's Linkedin profile, which indicates that Schumacher is a part-time contract attorney with Krohn & Moss, Ltd., in Chicago, Illinois but that he works from Springfield.  The Attorney Registration and Disciplinary Commission also lists Schumacher's registered business address as Krohn & Moss Ltd. in Chicago, Illinois.

In addition, Defendant asserts that the case should have been a simple prove up of damages and that a high degree of skill was not necessary to prosecute the case.  Defendant also asserts there is no indication that handling this case precluded counsel from employment in other cases.

In support of its position on the reasonable hourly rate, Defendant submits the affidavit of attorney Gordon W. Gates of Gordon, Wise & Schlosser, located in Springfield, Illinois.  In his affidavit, Gates states that his firm practices in various areas of litigation in and around Springfield.  His firm charges a billable hourly rate of $175 for attorneys

practicing three years or less, $200 for attorneys practicing 4 to 9 years, and $250 for attorneys practicing more than nine years.  Defendant further asserts that the Gordon, Wise & Schlosser website indicates the firm practices in various areas of litigation, including representing creditors and debtors in laws that protect consumers from unfair collection procedures.

Defendant also objects to the $145 per hour paralegal/law clerk rate requested by Plaintiff and asserts the appropriate rate is $75.

2.     *Plaintiff's Attorneys' Rates Are Set at $125 for Associates and $155 for Partners*

The best evidence of the market rate is the hourly rate the attorneys receive from paying clients for similar services.  Mathur v. Board of Trustees of Southern Illinois University, 317 F.3d 738, 743 (7th Cir. 2003).  The Seventh Circuit has identified a preference to "compensate attorneys for the amount that they would have earned from paying clients, i.e., the standard hourly rate."  Id. at 743; see also Tolentino, 46 F.3d at 653 ("Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional

desire to enforce the FDCPA through private actions, and therefore misapplies the law").

An attorney may not have an established market rate because the attorney uses contingent fee arrangements or relies on statutory fee awards.  See Spegon, 175 F.3d at 555.  Where an attorney does not have an established market rate, the "next best evidence" of the attorney's market rate is evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.  Mathur, 317 F.3d at 743 ("Only if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence").

When examining evidence of the rates similarly experienced attorneys in the community charge paying clients for similar work, the term "community" does not necessarily mean the local market area.  In circumstances where the "subject matter of the litigation is one where the attorneys practicing it are highly specialized" the community may be the "community of practitioners" in the national market.  Jeffboat, LLC v.

<u>Director, Office of Workers' Compensation Programs</u>, 553 F.3d 487, 490 (7th Cir. 2009).  Moreover, "just because the proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward."  <u>Mathur</u>, 317 F.3d at 743.

In this case, Plaintiff's attorneys have not presented evidence of what a paying client pays them for similar services.  Therefore, Plaintiff's attorneys must present evidence of what similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorneys have received in similar cases.

Plaintiff's attorneys did not submit evidence of other fee awards they have received in similar cases but do submit two types of evidence to support what similar experienced attorneys charge paying clients for similar work.

First, Plaintiff's attorneys present evidence of market rates in the Midwest region and nationally by way of the Consumer Law Attorney Survey, National Law Journal Survey, and the Laffey Matrix.  While some courts finds those sources persuasive, other courts do not.

Compare <u>Moore v. Midland Credit Management, Inc.</u>, 2012 WL

6217597, at *4 (N.D. Ind. 2012) (finding consideration of the Consumer

Law Attorney Fee Survey and Laffey Matrix appropriate; they provide "a

general range for billing rates that is useful as one factor in a court's

multi-factor analysis") <u>with</u> <u>Jimenez v. City of Chicago</u>, 2012 WL

5512266, at *6 (N.D. Ill. 2012) (noting that the Seventh Circuit has

never addressed the validity of the Laffey Matrix and refusing to rely on

the Laffey Matrix given the Seventh Circuit's expressed preferences for

other more direct measures of reasonable hourly rates).

However, this Court does not find the Consumer Law Attorney

Survey, National Law Journal Survey, or the Laffey Matrix persuasive in

this case because the relevant community is Springfield, Illinois.  This

case involved an average FDCPA case.  While attorneys do specialize in

the FDCPA area, the Court finds it is not a " highly specialized practice

area" which would justify using national market rates.  Moreover, local

counsel could have provided "comparably effective legal services."  <u>See</u>

<u>Jeffboat</u>, 553 F.3d at 490 (noting that a district court can reduce an out-

of-town attorney's rate where "local counsel could have provided comparably effective legal services and the rate of the out-of-town practitioner was higher than the local market rate"); <u>Mathur</u>, 317 F.3d at 744 (a court may reduce an out-of-town attorney's rate when services of equal quality were available in the area where the services were rendered).

Plaintiff's attorneys' second piece of evidence in support of their proposed rates is the Declaration of Attorney Schumacher.  In his Declaration, Schumacher asserts that he is a Springfield attorney, he is aware of the prevailing rates for consumer protection law attorneys in Springfield, and that the rates Plaintiff's attorneys sought (between $245 and $445 per hour for attorneys and $145 for paralegals and clerks) are reasonable.

This Court gives no weight to Schumacher's Declaration.  First, the Attorney Registration and Disciplinary Commission lists Schumacher as an attorney for Krohn & Moss, Ltd., in Chicago.  His association with Krohn & Moss, Ltd. undermines the credibility of his claim that

counsel's rates constitute the prevailing norm for consumer protection attorneys in Springfield.  Second, even if the Court were to accept that Schumacher is a Springfield attorney, Schumacher does not indicate that he charges clients the rates sought by Plaintiff's counsel and does not state that he has been awarded those rates for comparable work in Springfield; he only asserts his belief that those rates are reasonable.  This is of little value to the analysis.  See Elusta v. City of Chicago, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010)(affidavit stating that the rates sought were reasonable was of little use to the court); Soleau v. Illinois Dept. of Transp., 2011 WL 2415008, at *3 (N.D. Ill. 2011) (affidavit that merely states a rate is reasonable without disclosing the rate charged to clients is insufficient to support a requested rate).

Because Plaintiff's attorneys have not met their burden, this Court may make its own determination of a reasonable rate.  Pickett, 664 F.3d at 640.  Based on this Court's experience and knowledge of local billing practices, as well as on the Criminal Justice Act hourly rate in non-capital criminal and pro bono cases, the appropriate rate for consumer protection

litigation associate attorneys (attorneys with eight years or less of experience) is $125 and for partners (attorneys with more than eight years of experience) is $155.  The Court does not accept the rates provided by Attorney Gates because Gates does not indicate that those are the rates he charges for consumer protection litigation.  Instead, the rates identified by Attorney Gates are those more appropriately charged in complex civil and criminal litigation.  See Mathur, 317 F.3d at 743 (district court may lower the rate if the court decides the proffered rate overstates the value of the attorney's services); Moore, 2012 WL 6217597, at *5 (using as one of many factors the court's own knowledge of local billing practices when determining whether an attorney's billing rate is reasonable).  Therefore, the Court reduces the attorneys' rates of Attorneys Pascale, Rosenthal, Hill, Agruss and Baek to $125 per hour. As will be discussed below, Plaintiff is not entitled to fees for the time spent by Attorneys Krohn and Cohen or the paralegals/lawclerks. Therefore, the Court will not set a rate for Attorneys Krohn and Cohen, or for the paralegals/law clerks.

B.  <u>Some of Plaintiff's Attorneys' Time is Excessive and Not Reasonably Expended</u>

Defendant also challenges the number of hours expended by Plaintiff's attorneys.  When calculating a fee award, a court should exclude hours that were not reasonably expended, such as time spent on tasks that are not normally billed to a client or hours expended by counsel on tasks that should be delegated to a non-professional assistant. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983); <u>Spegon</u>, 175 F.3d at 553.

Plaintiff presented billing records identifying the attorneys and paralegals/law clerks that spent the following number of hours on this case: Attorney Hill– 67.7 hours; Attorney Agruss–12.3 hours; Attorney Krohn– .3 hours; Attorney Cohen– .7 hours; Attorney Baek– 20.1 hours; Attorney Pascale– 6.1 hours; Attorney Rosenthal– 3.3 hours; and paralegal/law clerks– 7.3 hours.

Defendant objects to many of the charges, asserting (1) Plaintiff may not be awarded fees for clerical, ministerial, or secretarial tasks; (2) Plaintiff's hours should be reduced to eliminate excessive, unnecessary

time entries; (3) Plaintiff should not recover travel expenses for her out-of-county counsel; and (4) the Court should exclude fees to out of state attorneys not admitted pro hac vice.  The Court addresses each broad category of objections in turn.

1.   *Plaintiff's Attorneys Are Not Entitled to Fees for Clerical, Ministerial, or Secretarial Tasks*

Defendant has identified a number of time entries that reflect time spent on administrative tasks, such as calls made to hire process servers, mailing documents, and updating calendar deadlines.  See Def.'s Response p. 7-9 (d/e 30).  Attorney or paralegal time should generally not be charged for administrative tasks because hours spent on such tasks are not normally billed to a paying client and those tasks are delegable to non-professional assistants.  See Spegon, 175 F.3d at 553. Administrative tasks include "organizing file folders, document preparation, copying of faxing documents, scheduling maters, and mailing letters."  Moore, 2012 WL 6217597 at *12; see also Pace v. Pottawattomie Country Club Inc., 2009 WL 4843403, at *13 (N.D. Ind. 2009) (finding the following tasks clerical and not allowable as part of a

fee award: "sending pleadings to client; review of appearances, summons, waiver of service and other similar documents; payment to EEOC, drafting cover sheets; and filing documents with the court").

The Court has reviewed the time entries in question (as identified in Defendant's objections) and agrees that those tasks were administrative and clerical.  Therefore, Attorney Agruss's time is  reduced by 1.1 hours, Attorney Baek's time is reduced by .1 hours, Attorney Rosenthal's time is reduced by .3 hours, and Attorney Hill's time is reduced by .2 hours.  In addition, Plaintiff is not entitled to fees for Attorney Hill's 1.5 hour time entry on November 8, 2012 for "removing all non-compensable work."  See, e.g., Young v. Accounts Recovery Bureau, Inc., 2012 WL 3764014, at *5 (S.D. Ind. 2012) (disallowing time spent in the "after-the-fact creation of a time record"), report and recommendation adopted as modified by 2012 WL 3776498 (2012). Finally, the Court will not award fees for any of the paralegal/law clerk time because all of the paralegal/law clerk time was clerical or administrative and not reasonably expended.

2.      *Plaintiff's Attorneys Are Not Entitled to Fees for Excessive,*
        *Unnecessary Time Entries*

Defendant next asserts that Plaintiff's hours should be reduced to

eliminate excessive, unnecessary time entries.

First, Defendant asserts Plaintiff's attorneys overstaffed the case.

The Seventh Circuit encourage district courts to "scrutinize fee petitions

for duplicative billing when multiple lawyers seek fees." Schlacher v. Law

Offices of Phillip J. Rotche & Associates, P.C., 574 F.3d 852, 858 (7th

Cir. 2009).

This case was staffed with seven attorneys and several

paralegals/law clerks.  Notably, Attorney Agruss, the lead attorney on the

case, left the firm and Attorney Hill took over this case.  In addition,

several attorneys played only a small, consulting role in the litigation.

Nonetheless, from the start, this was a simple case, made even simpler by

Defendant's admission of liability.  Therefore, Plaintiff is not awarded

any attorney fees for hours expended  by the consulting attorneys, Krohn

and Cohen.

Further, some of the billing appears redundant and duplicative.  For

example, Attorney Baek's March 14, 2012 entry billing .7 hours for reviewing the file, preparing a case evaluation, and providing a recommendation for procedural direction is excessive, particularly where Attorney Agruss had reviewed the file on February 6, 2012, and Attorney Pascale had reviewed the file on February 13, 2012.  Taking into account the overstaffing of the case, Attorney Baek's time is reduced by .7 hours.

Second, Defendant asserts that Plaintiff's counsels' billing of 12.5 hours for a response to Defendant's Motion for Judgment on the Pleadings was excessive.  The time sheet shows that Attorney Baek spent 11 hours preparing and revising the Motion.  Attorney Agruss discussed the Motion with the partners.  See October 25, 2011 Time Entry (billing 1.0 hours for related to the Motion).  Attorney Agruss's time spent discussing the Motion with the partners is not reasonable so his time is reduced by .5 hours.

Third, Defendant asserts that this Court should disregard any fees related to the deposition of Defendant's female debt collector because, as

the Court found in its order granting damages to Plaintiff,  the voice on

the recording was clearly male.  However, Plaintiff used the deposition at

trial.  Therefore, the Court finds the fees related to the deposition were

reasonably incurred and not excessive.

Fourth, Defendant asserts that Plaintiff engaged in a pattern of

unnecessary research.  Defendant points to time billed for research on the

statute of limitations, venue, and witness fees for service of a subpoena

on a third party, despite the fact that the relevant rules and statutes have

not changed.  See July 14, 2011 Entry for Attorney Agruss (1.5 hours)

and June 25, 2012 Entry for Attorney Rosenthal (1.0 hours).  The Court

agrees that some of the time spent on research was unnecessary and

excessive.  See, e.g., Farrar v. Receivable Management Serv., 2010 WL

2720786, at *4 (S.D. Ill. 2010) (finding that venue research was

unnecessary for an attorney of his experience where the relevant statute

had remained unchanged for years).  The Court deducts the 1 hour of

time spent by Attorney Rosenthal to research whether nonparty witness

deposition fees should be paid in advance from his total.  The July 14,

2011 entry, however, also bills for other services in addition to time spent researching venue.  Therefore, the Court will only deduct .5 hours from Attorney Agruss's total hours.

Fifth, Defendant asserts that the time spent by Plaintiff's attorneys preparing for trial, which Defendant calculates as 43.8 hours, was excessive where the maximum recovery possible was $1,000.  In addition, Defendant notes the trial took less than one hour, involved the examination of one witness, and focused solely on damages.

How Defendant arrives at 43.8 hours for trial preparation is unclear.  The time sheet shows Attorney Hill prepared for trial on October 29, 2012 (3.4 hours, 1.3 hours), October 28, 2012 (6.4 hours), October 26, 2012 (1.2 hours and .4 hours), October 25, 2012 (2.3 hours), and reviewed trial strategy and local rules regarding trial on October 9, 2012 (.2 hours) and October 4, 2012 (2.5 hours) for a total of 17. 7 hours.  A portion of the October 24, 2012 entry lists "develop trial strategy" (1.1 hours which also includes a hearing with the Court and discussion with opposing counsel).  Preparation for the pretrial

conference totaled approximately 3.4 hours.

However, Plaintiff's attorneys spent a large amount of time on a case that, after January 2012, was limited to damages.  Therefore, the Court reduces Attorney Hills time by 10 hours to reflect the excessive amount of time spent on this simple case.

Sixth, Defendant asserts that the documents prepared by Plaintiff's counsel were form documents.  Defendant complains that Plaintiff's attorney spent 1.5 hours preparing the Complaint in this case despite the fact that the complaint only contained 19 paragraphs and was based on the same form used in numerous cases.  Def. Mem. p. 11 (citing Group Exhibit D); August 16, 2011 Entry for Attorney Agruss (1.5 hours).  In addition, Defendant complains that Attorney Pascale spent 1.5 hours drafting discovery but the discovery shows that counsel made no effort to tailor the discovery to the case.  In particular, the Request to Produce sought documents relating to the verification of the debt, as well as postcards and envelopes used by the Defendant in collecting a debt.  However, Plaintiff's Complaint did not allege any actions relating to

verification, postcards, or envelopes.  Defendant's argument is well-taken and Attorney Agruss's hours are reduced by .5 and Attorney Pascale's hours are reduced by . 5.  See, e.g., Young, 2012 WL 3764014 at *3 (reduced time spent preparing the complaint by one-half because it was excessive to charge the 1.9 hours to make relatively minimal changes to a form complaint).

Seventh, Defendant asserts that the time sheet is filled with duplicative efforts and excessive internal conferences.  See Def. Mem. p. 12-13 (listing specific time entries; 1 hour for Attorney Agruss; 2.5 hours for Attorney Baek; .1 hours for Attorney Cohen; .8 hours for Attorney Hill; and 1.2 hours for Attorney Rosenthal).

The time identified by Defendant was duplicative and excessive. Therefore, Attorney Agruss's time is reduced by .2 hours, Attorney Baek's time is reduced by .5 hours, Attorney Hill's time is reduced by .2 hours, and Attorney Rosenthal's time is reduced by .1 hours.  Attorney Cohen's time has already been reduced to zero.

Eighth, Defendant asserts it should not be responsible for the

preparation and work related to Plaintiff's counsel's motion to substitute counsel because it is not something an attorney would charge a paying client. The Court disagrees and finds that the time billed for preparing the motion to substitute is reasonable. <u>Moore</u>, 2012 WL 6217597 at *11 (rejecting argument that drafting a motion to substitute counsel is not something for which a client would expect to be billed).

### 3. *Plaintiff's Attorneys Are Not Entitled to Travel Expenses for Counsel to Attend Trial*

Defendant asserts that Plaintiff's counsel is not entitled to its travel time from Chicago to Springfield for the final pretrial conference and trial, particularly where Schumacher is purportedly located in Springfield, Illinois.

The Court will reduce Attorney Hill's time by 7 hours for the time traveling to Springfield for trial because the Court offered for counsel to conduct the bench trial through video technology. Further, Attorney Schumacher could have handled this case and, at a minimum, participated in the pretrial conference. Therefore, the 7 hours of travel time for the final pretrial conference were also not reasonable. Therefore,

Attorney Hill's hours will be reduced by 14 hours.

### 4. *Out of State Attorneys Not Admitted Pro Hac Vice*

Defendant asserts that the time incurred by Attorney Baek, Attorney Pascale, Attorney Cohen, and Attorney Rosenthal, who were not admitted to practice generally or pro hac vice before this Court should be excluded.

Except for Attorney Cohen, whose time has already been reduced to zero, the time expended by these attorneys is recoverable. None of these attorneys entered their appearance in the case or signed any pleadings. Attorney Hill entered his appearance and Baek, Pascale, and Rosenthal essentially worked under his supervision. Therefore, the fees of those attorneys are recoverable. See, e.g., Moore, 2012 WL 6217597 at *10 (finding that attorney Pascale's fees were recoverable even though she was not licensed to practice before that court order admitted pro hac vice where the other attorneys had all properly entered their appearance in the case and she worked under their supervision).

Given the rates identified by the Court and reducing the hours as

set forth above, the lodestar amount of fees is $9,700.

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| Hill | 41.8 | $125 | $5,225 |
| Agruss | 9.5 | $125 | $1,187.50 |
| Krohn | 0 | | $0 |
| Cohen | 0 | | $0 |
| Baek | 18.8 | $125 | $2,350 |
| Pascale | 5.6 | $125 | $700 |
| Rosenthal | 1.9 | $125 | $237.50 |
| Para/law clerk | 0 | | $0 |
| | | Total: | $9,700 |

C.     The Lodestar Amount is Reasonable and No Further Adjustment is Necessary

Having determined the lodestar, this Court may adjust the fees

based on the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

> and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and
> length of the professional relationship with the
> client; and (12) awards in similar cases.

<u>Hensley</u>, 461 U.S. at 430, n. 3.

The Court took into account many of those factors when determining the appropriate rate and whether the time charged was excessive. Given the rate applied, the lodestar amount is reasonable in this case. Therefore, no further adjustment is necessary.

However, if this Court had not reduced the attorneys' billing rates in this case, the Court would have, in light of the factors reflected above that were not otherwise taken into account, reduced the attorney fees by a significant percentage. <u>See</u> <u>Altergott v. Modern Collection Techniques, Inc.</u>, 864 F. Supp. 778, 783 (N.D. Ill. 1994) (where 70% of the legal fees were incurred after defendant admitted a violation of the FDCPA, the court reduced the lodestar amount by 50%, noting that the defendant "should not have to shoulder the entire financial burden occasioned by [the plaintiff's attorneys'] failure to make a reasonable assessment of the value of their case").

### III.  BILL OF COSTS

Under 28 U.S.C. § 1920, a federal court may tax as costs fees of the clerk, fees for transcripts necessarily obtained for use in the case, and fees and disbursements for printing and witnesses.  Plaintiff has filed a Bill of Costs seeking costs in the amount of $1,113.

The Bill of Costs itemizes the costs as follows: $350 for fees of the Clerk; $272.50 for service of summons and subpoenas, $470.50 for fees for transcripts; and $20 for witness fees.  Plaintiff supports the request with a "Job Register" for Krohn Moss, Ltd., listing the fees.  In particular, the job register shows: (1) Service Fees on September 12, 2011 in the amount of $42.50 and two on October 10, 2012 (rush service) in the amount of $115 each; and (2) court reporter fees for July 2, 2012 in the amount of $53.25 and two on September 17, 2012 in the amount of $177.50 and $239.75.

With the exception of the filing fee and the witness fee, Defendant objects to Plaintiff's Bill of Costs.  Defendant asserts that Plaintiff failed to provide attachments that clearly show the nature and amount of each

charge.  Defendant points out that with regard to the service fees,

Plaintiff fails to identify the person served, why "rush" service was

necessary, and the reason for the service.  With regard to the court

reporter fees, Defendant notes that Plaintiff fails to identify the deposed

witness, the charge per page, or the type of transcript ordered.

In her Response, Plaintiff provided additional information.  See d/e

34.  Plaintiff attaches (1) an Invoice from Judicial Attorney Services for

service on Jose Rodriguez ($75) and Shantel Hamilton ($40), which

Plaintiff explains was for service of subpoenas for deposition and that

rush service was necessary given the close proximity to the scheduled

deposition date; (2) an Invoice from Judicial Attorney Services for service

on John C. Bonewicz ($75) and Shantel Hamilton ($40) for trial

subpoenas when the trial was initially scheduled for November 6, 2012

(the trial was moved to October 30, 2012); (3) an Invoice from

Nottingham Reporting for the cost of a copy of the transcript of the

discovery deposition of Plaintiff ($53.25) at $1.75 per page (27 pages)

and postage; (4) an Invoice from TSG Reporting for the court reporter

appearance fee and transcript of the deposition of John C. Bonewicz

($177.50); and (5) an Invoice from TSG Reporting for the court reporter

appearance fee and transcript of the deposition of Shantel Hamilton

($239.75).  Both Hamilton and Bonewicz's depositions were used at

trial.  According to Plaintiff, the deposition of Rodriguez did not occur

due to Defendant's objection.

The Court finds that the $1.75 per page charge for a copy of

Plaintiff's transcript exceeds the rate set by the Judicial Conference of the

United States, which is $.90 per page for a copy of a transcript.  See, e.g.,

Trading Technologies, Intern., Inc. v. eSpeed, Inc., 750 F. Supp. 2d 962,

975 (N.D. Ill. 2010); see also  Aebischer v. Stryker Corp., 2007 WL

1668065, at *5 (C.D. Ill. 2007) (noting that the court has accepted the

Judicial Conference Rates as reasonable).  Therefore, the Court will

reduce the charge for Plaintiff's deposition transcript to $24.30 (27 pages

at $.90 per page).

Moreover, shipping and handling for deposition transcripts are

generally not recoverable.  See Riley v. UOP LLC, 258 F. Supp. 2d 841,

845 (N.D. Ill. 2003) (shipping and handling costs for deposition transcript not recoverable); but see United States E.E.O.C. v. AutoZone, Inc., 822 F. Supp. 2d 824, 840 (C.D. Ill. 2011) (allowing, in exercise of the Court's discretion, costs for shipping transcripts).  Therefore, this Court will reduce the Bill of Costs by $116 (the two $55 shipping and handling charges and the $6 postage charge for the deposition transcripts).

Finally, the fees for service of the subpoenas to Rodriguez and Bonewicz ($75 each) exceed the $55 plus mileage rate charged by the U.S. Marshal.  See Perry v. City of Chicago, 2011 WL 612342, at * 3 (N.D. Ill. 2011) (noting that fees for service of process may not exceed the U.S. Marshal's rate).  The Invoices do not reflect mileage.  Therefore, the Bill of Costs will be reduced by $40.

Plaintiff's Bill of Costs is allowed in the amount of $934.05.


IV.  CONCLUSION

For the reasons stated, Plaintiff's Motion for Attorneys' Fees and

Costs Pursuant to Judgment (d/e 27) is GRANTED IN PART and

DENIED IN PART.  Plaintiff is awarded attorney fees in the amount of

$9,700 and costs in the amount of $934.05.

ENTER: January 9, 2013

FOR THE COURT:

_____s/Sue E. Myerscough_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
